# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

_____

RYAN J. GAYLORD,

                                  Petitioner,

        v.                                     9:22-CV-588
                                                  (GTS/ATB)

JOSEPH E. COREY, Superintendent of
Auburn Correctional Facility,

                                  Respondent.
_____

RYAN J. GAYLORD, Petitioner, pro se
PRISCILLA I. STEWARD, Assistant Attorney General, for the Respondent

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

Petitioner, while incarcerated at Auburn Correctional Facility,[1] filed this petition pursuant to 28 U.S.C. § 2254, challenging an August 21, 2018 judgment of conviction after a Broome County Court jury found him guilty of predatory sexual assault against a child.  (Petition ("Pet.") at 1) (Dkt. No. 1).  This matter has been referred to me for Report and Recommendation by the Honorable Glenn T. Suddaby, United States District Judge, pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. Local Rule 72.3(c).

Following his conviction and sentencing,[2] petitioner filed a counseled appeal brief in the Appellate Division, Third Department.  (SR. 332-550, 840-79).  The

---

[1] According to the docket, petitioner has since been transferred to Clinton Correctional Facility.  (Dkt. No. 13).

[2] Petitioner was sentenced to serve an indeterminate prison term of 18 years to life. (*Id.*).

1

Appellate Division unanimously affirmed the judgment of conviction on May 13, 2021. *People v. Gaylord*, 194 A.D.3d 1189 (3rd Dep't 2021) (Dkt. No. 9 at 1-4). Petitioner subsequently filed a counseled application for leave to appeal to the New York Court of Appeals, which request was denied on July 1, 2021. *People v. Gaylord*, 37 N.Y.3d 972 (2021) (Dkt. No. 9 at 5).

In his federal habeas corpus application filed on June 6, 2022, petitioner raises several arguments as grounds for relief. (*See generally* Pet.). Respondent filed a response to the petition, together with the pertinent state court records[3] and a memorandum of law. (Dkt. Nos. 8, 9, 11). For the following reasons, this court agrees with respondent and will recommend denying the petition.

## I.    Relevant Facts

Respondent has included a detailed description of the facts and procedural history of this case. (Resp. MOL at 3-15) (Dkt. No. 11-4). This court will summarize the relevant facts as set forth in the state court record for clarity, and will discuss specific facts as necessary in the analysis of petitioner's claims.

### A.    Pre-Trial Proceedings

On July 28, 2017, two felony complaints were filed in the Town of Lisle Court, each charging petitioner with Predatory Sexual Assault Against a Child in violation of New York Penal Law § 130.96. (SR. 45). On or about November 13, 2017, petitioner

---

[3] Because the state court record contains repeated identifiers of a minor victim of a sex offense, most of the state court record, and respondent's memorandum of law, has been sealed. (*See* Dkt. No. 7).

was charged by a grand jury in a two-count indictment for the same crimes.  (SR. 37-38, 46).

Upon arrest, petitioner was interrogated in a recorded interview by Detective Brian Kittle of the Broome County Sheriff's Office.  On February 16, 2018, petitioner appeared for a pretrial suppression hearing with assigned counsel, public defender Jonathan Rothermel.  (Dkt. No. 11-3 at CM/ECF 1-65).  At that time, the court issued a decision, over petitioner's objection, allowing the prosecution to admit the recorded interview into evidence during their case-in-chief.  (Dkt. No. 11-3 at CM/ECF 1-65; SR. 194-95).

The prosecutor subsequently moved to redact portions of the interview in which petitioner discussed the victim's purported history of sexual conduct, pursuant to New York Criminal Procedure Law § 60.42, New York's rape shield law.  (SR. 194-95). Likewise, the prosecutor asked the trial court to preclude the defense from eliciting evidence regarding the victim's prior sexual conduct through cross-examination of witnesses, or during their own direct case.  (*Id.*).  Petitioner opposed the motion.  (SR. 197).  In a decision issued on March 1, 2018, the trial court granted the motion to preclude such evidence.  (SR. 201-05).  Sometime prior to the commencement of trial, the prosecutor informed the court and defense counsel that she did not intend to introduce petitioner's recorded interview into evidence.

### B.    The Trial

Petitioner's jury trial was held from May 29, 2018, through June 1, 2018, before County Court Judge Kevin P. Dooley.  At a conference held prior to opening statements, defense counsel set forth his intention to cross-examine Detective Kittle

3

about the content of petitioner's recorded interview, notwithstanding the prosecution's representation that they would not be introducing the statement as evidence.  (T. 117, 120-31).  The court ultimately ruled that petitioner could not admit such evidence, as it would effectively create a "back door" to admitting petitioner's exculpatory version of events without requiring petitioner to take the stand.  (T. 120-31).

The prosecution's witnesses consisted of the victim, the victim's parents, Detectives Kittle and Harder, two of petitioner's former girlfriends, a registered nurse, and three forensic analysts.  Through witness testimony and various forms of documentary evidence, the prosecution established that from December 2016 through mid-July 2017, the victim, who was born in February 2005 and 11 years old when the petitioner moved in, lived in a double-wide trailer home in the Town of Lisle with her mother, her stepfather, her nine-year old brother, and petitioner, who was her uncle. (T. 401-04, 427). The victim and her brother had their own separate bedrooms, but shared a connecting bathroom. (T. 405-06). Petitioner slept on the living room couch, which was next to the victim's bedroom. Petitioner kept his belongings in a box and a blue tote in the living room. (T. 407).

Over the course of living with the victim and her family, petitioner began to form a close relationship with the victim to the extent they would share "personal information" with each other.  (T. 409).  The victim testified that she felt like she was dating petitioner, and that he was her boyfriend.  (*Id.*).  In January 2017, the victim awoke in the middle of the night to find petitioner's hand on her breast.  (T. 410).  Petitioner told the victim that he considered her to be his girlfriend. (T. 411).  The petitioner later told the victim the "steps" that their relationship would take – hand

4

holding, French kissing, fondling with shirts off, fondling with pants off, and then "direct sex." (T. 411-12). Petitioner and the victim moved through the "steps" of their relationship, culminating in sexual intercourse sometime in mid-February 2017. (T. 416-22). From that point until approximately July 14, 2017, petitioner and the victim had sexual intercourse three to four times a week in the victim's bedroom, her brother's bedroom, the adjacent bathroom, the living room, or in a tent in the backyard. (T. 423, 425-26). They also engaged in oral sex approximately six times. (T. 436-37). Petitioner almost always used a condom when they engaged in sexual intercourse, and would flush the used condom down the toilet of the victim and her brother's bathroom. (T. 429, 431-32). Petitioner would burn the condom wrappers in the living room fireplace or in a fire pit in the yard. (T. 429, 431-35).

The victim performed tasks for petitioner that he said "girlfriends are supposed to do," including preparing his coffee and meals, cleaning his room, and washing his laundry. (T. 443-44). Petitioner also set rules for her to follow: she was not permitted to participate in school activities, invite her friends to the house (unless she was menstruating), or talk to boys on the phone or at school. (T. 445). The victim's mother and stepfather testified that aspects of the victim's relationship with petitioner were inappropriate, including the victim's propensity for sitting on petitioner's lap (T. 596-97, 672) and the care she openly provided for petitioner (T. 595-96, 669).

A few days after her last sexual encounter with petitioner on July 14, 2017, the victim reported petitioner's abuse to her mother because the victim "just wanted to be a kid." (T. 447-51). She showed her mother petitioner's condoms, which he kept in a blue tote in the living room. (T. 450, 609). The septic tank in the children's bathroom

was not "hooked up," and when the victim's mother and stepfather looked underneath the trailer, they discovered many used condoms lying on the concrete pad. (T. 610-14, 677). The victim's mother and stepfather did not use condoms (T. 610, 676), nor did petitioner use condoms with the other women with whom he engaged in sexual intercourse at the victim's home (T. 795, 798-99, 816).

Sometime after the abuse was reported to law enforcement, Detectives Harder and Kittle looked underneath the trailer and noticed that there was sewage lying on the concrete pad directly underneath the children's bathroom. They found approximately 15 to 20 condoms in the sewage, all in various stages of decomposition. (T. 698-701, 723-24). The detectives retrieved and secured four condoms from underneath the trailer. (T. 701-02, 725-26). Detective Kittle also interviewed several members of the victim's family, and obtained petitioner's permission to take a DNA sample with a buccal swab and permission to search petitioner's cell phone. (T. 721, 723, 729-31, 734). Forensic analysis determined that the DNA recovered from the four condoms matched petitioner's DNA sample. (T. 575-81).

Petitioner did not testify at the trial. Petitioner's brother-in-law, Brian Sanford, testified for the defense.

The jury acquitted petitioner of one count of predatory sexual assault against a child, but convicted him on the second count of the same charge. (T. 996). On August 21, 2018, petitioner was sentenced to an indeterminate prison term of 18 years to life. (S. 14).

## II.    Generally Applicable Law

### A.    Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

The AEDPA provides that, when a state court has adjudicated the merits of a petitioner's constitutional claim, a federal court may grant an application for a writ of habeas corpus only if "the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  *See also, e.g.*, *Noble v. Kelly*, 246 F.3d 93, 98 (2d Cir. 2001); *Brown v. Alexander*, 543 F.3d 94, 100 (2d Cir. 2008).  This is a "difficult to meet," and "highly deferential standard for evaluating state-court rulings, which demands that state court decisions be given the benefit of the doubt."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citations omitted).

To determine whether a state-court decision is contrary to clearly established Supreme Court precedent, the federal court must consider whether the state court decision "'applies a rule that contradicts [such] law' and how the decision 'confronts [the] set of facts' that were before the state court." *Id*. at 182 (quoting *Williams v. Taylor*, 529 U.S. 362, 406 (2000)) (alterations in original).  A state court decision involves an unreasonable application of clearly established Supreme Court precedent if it correctly identifies the governing legal principle, but unreasonably applies or unreasonably refuses to extend that principle to the facts of a particular case.  *See Williams*, 529 U.S. at 413; *Ramdass v. Angelone*, 530 U.S. 156, 166 (2000).

Under the AEDPA, a state court's factual findings are presumed correct, unless that presumption is rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). If the state court failed to decide a claim "on the merits," the pre-AEDPA standard of review applies, and both questions of law and mixed questions of law and fact are reviewed *de novo*. *Washington v. Shriver*, 255 F.3d 45, 55 (2d Cir. 2001). Finally, the Supreme Court has held that circuit and district court decisions do not constitute "clearly established Federal Law, as determined by the Supreme Court." *Parker v. Matthews*, 567 U.S. 37, 40 (2012). Instead, circuit court decisions may illustrate the "possibility" of fair-minded disagreement, sufficient to justify denying the writ. *White v. Woodall*, 572 U.S. 415, 422 n.3 (2014).

### B.    Exhaustion

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, . . . thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (internal quotation and other citations omitted)); 28 U.S.C. § 2254(b)(1). The prisoner must "fairly present" his claim in each appropriate state court, including the highest court with powers of discretionary review, thereby alerting that court to the federal nature of the claim. *Id.*; *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994).

"A habeas petitioner has a number of ways to fairly present a claim in state court without citing 'chapter and verse' of the Constitution, including '(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in

terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.'" *Hernandez v. Conway*, 485 F. Supp. 2d 266, 273 (W.D.N.Y. 2007) (quoting *Daye v. Attorney General*, 696 F.2d 186, 194 (2d Cir. 1982)).

Where a petitioner has failed to exhaust his claims, but he cannot return to state court, petitioner's claims are then "deemed" exhausted, but barred by procedural default. *Bossett v. Walker*, 41 F.3d 825, 828-29 (2d Cir. 1994). The merits of such a procedurally defaulted claim may not be reviewed by a federal court unless the petitioner can show both cause for the default and actual prejudice resulting from the alleged violation of federal law, or if he can show that the constitutional violation has resulted in the conviction of one who is "actually innocent." *Rivas v. Fischer*, 687 F.3d 514, 540 (2d Cir. 2012); *Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008) (internal quotation and citations omitted). The actual innocence prong is referred to as the fundamental miscarriage of justice exception. *Rivas, supra*. "Cause" exists if "the prisoner can show that some objective factor external to the defense impeded counsel's effort to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Prejudice exists if there is a "reasonable probability" that the result of the proceeding would have been different absent the alleged constitutional violation. *Stickler v. Greene*, 527 U.S. 263, 289 (1999).

### C.    Adequate and Independent State Ground Doctrine

A federal judge may not issue a writ of habeas corpus if an adequate and independent state-law ground justifies the prisoner's detention, regardless of the federal

claim. *See Wainwright v. Sykes*, 433 U.S. 72, 81-85 (1977). A federal habeas court generally will not consider a federal issue if the last state court decision to address the issue "'rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" *Garvey v. Duncan*, 485 F.3d 709, 713 (2d Cir. 2007) (quoting *Lee v. Kemna*, 534 U.S. 362, 375 (2002)) (emphasis added). This rule applies whether the independent state law ground is substantive or procedural. *Id*.

When the independent and adequate state ground supporting a habeas petitioner's custody is a state procedural default, additional concerns come into play. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *see also Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011) (quoting *Garcia v. Lewis*, 188 F.3d 71, 76 (2d Cir. 1999) ("[P]rocedural default in the state court will . . . bar federal habeas review when the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar.") (internal quotation marks omitted)). There are certain situations in which the state law basis for decision will not be considered "adequate": (1) where failure to consider a prisoner's claims will result in a "fundamental miscarriage of justice," *Coleman*, 501 U.S. at 750; (2) where the state procedural rule was not "'firmly established and regularly followed,'" *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991); *James v. Kentucky*, 466 U.S. 341, 348-349 (1984); and (3) where the prisoner had "cause" for not following the state procedural rule and was "prejudice[d]" by not having done so. *Wainwright v. Sykes*, 433 U.S. at 87.

In certain limited circumstances, even firmly established and regularly followed rules will not prevent federal habeas review if the application of that rule in a particular

10

case would be considered "exorbitant." *Garvey v. Duncan*, 485 F.3d at 713-14 (quoting *Lee v. Kemna*, 534 U.S. at 376). In order to find that the application of a generally sound rule is exorbitant, the court considers (1) whether the alleged procedural violation was actually relied upon by the state court and whether perfect compliance with the state rule would have changed the court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner "substantially complied" with the rule given the realities of trial and whether demanding perfect compliance with the rule would serve a legitimate governmental interest. *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003).

## DISCUSSION

### III.  <u>Evidentiary Rulings</u>

"'[H]abeas corpus relief does not lie for errors of state law,' and that necessarily includes erroneous evidentiary rulings." *Hawkins v. Costello*, 460 F.3d 238, 244 (2d Cir. 2006) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)) (internal citations omitted). "However, when a trial court's evidentiary exclusions take on constitutional dimensions . . . 'we must examine the stated reasons for the exclusion and inquire into possible state evidentiary law errors' that may have deprived the petitioner of a fair trial." *Scrimo v. Lee*, 935 F.3d 103, 114-15 (2d Cir. 2019) (quoting *Washington v. Schriver*, 255 F.3d 45, 57 (2d Cir. 2001)).

Moreover, a criminal defendant has a constitutional right to a "meaningful opportunity to present a complete defense" under the Compulsory Process Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment. W*ade v.*

*Mantello*, 333 F.3d 51, 57 (2d Cir. 2003) (citing cases); *see also United States v. Al Kassar*, 660 F.3d 108, 122-23 (2d Cir. 2011). Thus, the Supreme Court has held that states may not arbitrarily apply procedural rules to prevent a defendant from putting "material" evidence before the jury that may influence the jury's determination of guilt. *Wade*, 333 F.3d at 58. In assessing what is material, the determinative question is "whether the omitted evidence would have created a reasonable doubt." *Wade*, 333 F.3d at 59; *see also United States v. Agurs*, 427 U.S. 97, 112-13 (1976). "This means that the omission must be evaluated in the context of the entire record." *Agurs*, 427 U.S. at 112.

At the same time, however, the defendant's right to present relevant evidence is not unlimited and "is subject to 'reasonable restrictions.' Central among these restrictions are state and federal rules of procedure and evidence 'designed to assure both fairness and reliability in the ascertainment of guilt and innocence.'" *Wade*, 333 F.3d at 58 (quoting *United States v. Scheffer*, 523 U.S. 303, 308 (1998) and *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973)). "Restrictions on a defendant's presentation of evidence are constitutional if they serve 'legitimate interests in the criminal trial process,' and are not arbitrary or disproportionate to the purposes they are designed to serve.'" *United States v. Almonte*, 956 F.2d 27, 30 (2d Cir. 1992) (citations omitted).

In considering whether the exclusion of evidence violated a criminal defendant's right to present a complete defense, the reviewing court should start with "the propriety of the trial court's evidentiary ruling." *Wade*, 333 F.3d at 59; *see also Washington v. Schriver*, 255 F.3d at 57. The inquiry "into possible state evidentiary law errors at the trial level" assists the reviewing court in "ascertain[ing] whether the appellate division

12

acted within the limits of what is objectively reasonable." *Hawkins,* 460 F.3d at 244
(quoting *Jones v. Stinson*, 229 F.3d 112, 120 (2d Cir. 2000)).

If potentially exculpatory evidence was erroneously excluded, the reviewing
court then looks at "whether 'the omitted evidence [evaluated in the context of the
entire record] creates a reasonable doubt that did not otherwise exist.'" *Justice v. Hoke*,
90 F.3d 43, 47 (2d Cir.1996) (quoting *United States v. Agurs*, 427 U.S. 97, 112 (1976))
(alteration in original); *accord Hawkins*, 460 F.3d at 244 (citing *Wade*, 333 F.3d at 59
(stating that "[t]his test applies post-AEDPA")).  If, on the other hand, the state court's
evidentiary ruling was correct as a matter of state evidentiary law, the habeas court's
"inquiry is more limited[,]" addressing itself only to "whether the evidentiary rule is
'arbitrary' or 'disproportionate to the purposes [it is] designed to serve.'" *United States
v. Scheffer*, 523 U.S. at 308 (quoting *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)); *see
also Holmes v. South Carolina*, 547 U.S. 319, 323-25 (2006). A state evidentiary rule is
"unconstitutionally arbitrary or disproportionate only where it has infringed upon a
weighty interest of the accused." *Scheffer*, 523 U.S. at 308.

### A.    Petitioner's Recorded Interview

Petitioner argues that the trial court deprived him of a fair trial and the right to
present a defense by precluding the admission of, or any reference to, his recorded
interview at trial.  (Pet. at 5, 7).  Petitioner's primary theory of defense sought to attack
the adequacy of the investigation by law enforcement into the victim's claims.  In
conjunction with this line of defense, defense counsel intended to discuss the contents
of petitioner's recorded interview at trial, despite the fact that the prosecution was not

introducing it as evidence in their case-in-chief. (T. 120-131, 310-343). Specifically, defense counsel argued that, although not admissible for the truth of the matters asserted, the petitioner's statements during his interview were admissible for non-hearsay purposes – i.e., that petitioner was cooperating with law enforcement, that he maintained his innocence throughout the interview, and that the detectives failed to follow-up on "investigative leads" suggested by petitioner during the interview. (T. 121-22; SR. 97-99). Ultimately, the trial court determined that the substance of the recorded interview was "inadmissible hearsay" that was "self-serving," and that defense counsel had not established any exception to that rule. (T. 319). The trial court explained that defense counsel's attempt to "back-door" petitioner's version of events, without petitioner himself testifying, was impermissible. (T. 322). Thus, the trial court precluded any references at trial to the videotaped interview, however indicated that petitioner could, at any time, request an offer of proof outside the presence of the jury if counsel believed there was a specific reason that the interview should be introduced. (T. 130-31).

On direct appeal, the Third Department concluded that the trial court "did not deprive [petitioner] of a fair trial or the right to present a defense when it precluded questioning of the detective and references to the videotaped interview at trial." *People v. Gaylord*, 194 A.D.3d at 1191. The appellate court found no abuse of discretion by the trial court, specifically stating that their review of Detective Kittle's testimony established "many weaknesses in the investigation," notwithstanding the preclusion of the recorded interview. (*Id.* at 1192). They also pointed out petitioner's failure to

request an offer of proof to pursue a particular line of questioning relative to the recorded interview, despite the trial court's encouragement to do so. (*Id.* at 1192). The appellate court further opined that Detective Kittle did not "open the door" to this precluded line of questioning when he made a general reference to conducting interviews of several people, including petitioner. (*Id.*) Nor did the trial court improperly assume an advocacy role during petitioner's cross-examination of Detective Kittle when, at a sidebar conference, the Judge explained once again that his prior ruling precluded references to the videotaped interview. (*Id.* at 1192).

The trial court's evidentiary decision to exclude testimony about and/or reference to the recorded interview, and the appellate division's affirmance of that ruling, was neither "contrary to," nor an "unreasonable application" of, clearly established federal law. At the outset, the trial court's ruling was proper under the applicable state law. In New York courts, hearsay is defined as "a statement not made in the course of the trial in which it is offered . . . if it is offered for the truth of the fact asserted in the statement," and it is inadmissible unless it qualifies as a hearsay exception. *People v. Huertas,* 553 N.E.2d 992, 995 (N.Y. 1990) (citation and quotation marks omitted). The parties here did not genuinely dispute that petitioner's out-of-court statements to the police contained in the recorded interview constituted hearsay. After a lengthy discussion on the issue, the trial court determined that there was no applicable exception under which the introduction of petitioner's self-serving statement would be appropriate or relevant, and rejected what it perceived as petitioner's attempt to circumvent the hearsay rules. Clearly, petitioner was not entitled to introduce his out of court

15

statements for the purpose of bolstering his defense without testifying himself. *See People v. Decker*, 195 N.Y.S.3d 160, 177 (3ʳᵈ Dep't 2023) (Finding that recordings of criminal defendant's interviews with investigator's "clearly fell under the definition of self-serving hearsay, and defendant was not permitted to introduce such evidence in lieu of his own testimony, where he would be subject to cross-examination[.]").  Thus, this court declines to find that the trial court decision to preclude this evidence violated the New York state evidentiary rules as they pertain to hearsay evidence.

Because the state court's ruling was not improper as a matter of state evidentiary law, the analysis turns to whether the trial court's ruling was "unconstitutionally arbitrary or disproportionate" – i.e., whether it infringed upon a "weighty interest" of petitioner.  *Scheffer*, 523 U.S. at 308.  In *Scheffer,* the Supreme Court cited three cases as examples in which a ruling "infringed upon a weighty interest of the accused:" *Rock v. Arkansas*, 483 U.S. at 62 (holding that a state law "excluding all posthypnosis testimony infringe[d] impermissibly on the right of a defendant to testify on his own behalf"); *Chambers v. Mississippi*, 410 U.S. at 300 (holding that a defendant was denied a fair trial where the trial court prevented potential witnesses from testifying that another individual had confessed to the crime, and these hearsay confessions were given "under circumstances that provided considerable assurance of their reliability"); *Washington v. Texas*, 388 U.S. 14, 22-23 (1967) (holding that a defendant's right to compulsory process was denied by a state law that prevented alleged accomplices from testifying on behalf of the defendant at trial).

Here, the trial court's preclusion of reference to or testimony concerning petitioner's recorded interview did not infringe upon any of petitioner's weighty interests, as placed in context by the *Scheffer* court. "[W]ell-established rules of evidence [that] permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury" do not fall within this category. *Holmes v. South Carolina*, 547 U.S. 319, 326 (2006). As a general matter, the hearsay rule is another such "well-established rule." *See Bowman v. Ercole*, No. 09 Civ. 4801, 2010 WL 6620879, at *29 (S.D.N.Y. Sept. 1, 2010) ("One such well-established rule of procedure and evidence is the hearsay rule."); *United States v. Persico*, No. 04-CR-911, 2006 WL 3246922, at *2 (E.D.N.Y. Nov. 8, 2006) (rejecting as a "non-starter" the argument that the hearsay rules are "arbitrary—and therefore unconstitutional" simply because they categorically exclude certain evidence that could prove useful to defendants); *see also Scheffer*, 523 U.S. at 309 (citing to Federal Rule of Evidence 802 for the proposition that "[s]tate and Federal Governments unquestionably have a legitimate interest in ensuring that reliable evidence is presented to the trier of fact in a criminal trial"); *Chambers*, 410 U.S. at 298 ("The hearsay rule, which has long been recognized and respected by virtually every State, is based on experience and grounded in the notion that untrustworthy evidence should not be presented to the triers of fact."). Accordingly, New York's hearsay rules are not "disproportionate to the purposes [they are] designed to serve[;]" i.e., to exclude unreliable testimony. *Hawkins*, 460 F.3d at 244 (quoting *Scheffer*, 523 U.S. at 308) (internal quotation marks omitted).

17

Furthermore, in this case that purpose was appropriately served by the exclusion of petitioner's out-of-court statements in his recorded interview, as they lacked any indicia of reliability, and were entirely self-serving and exculpatory. *See United States v. Camacho*, 163 F. Supp. 2d 287, 308 (S.D.N.Y. 2001) ("Statements to police and prosecutors by criminal suspects or defendants are not considered to be reliable, because the declarant generally wants to obtain favorable treatment; [defendant's] statements to the police were especially unreliable because they were self-exculpatory."); *People v. Dvoroznak*, 127 A.D.2d 785 (2nd Dep't 1987) (upholding conviction where trial court excluded defendant's post-arrest statement to police on grounds that "the motivating factor of making an exculpatory statement after an arrest could lead one to believe that the defendant did not tell the truth and that the proffered testimony was therefore inadmissible hearsay" (internal quotation marks omitted)).

Even if the trial court had erred in precluding petitioner's recorded interview, no constitutional error exists because the proposed evidence, "evaluated in the context of the entire record," does not create a "reasonable doubt that did not otherwise exist." *Hawkins*, 460 F.3d at 244 (citations omitted). Petitioner purportedly intended to establish with this evidence that the detectives did not heed his allegations of innocence, nor did they make an effort to look for other reasons behind the victim's allegations against him. This evidence, however, did not contradict the victim's detailed testimony of abuse as corroborated by her mother's testimony, as well as the physical evidence introduced at trial including petitioner's used condoms found beneath the children's bathroom. Accordingly, petitioner's claim for habeas relief should be denied on this

basis.  *See Curet v. Graham*, No. 14-CV-04831, 2019 WL 13184139, at *27 (S.D.N.Y.

Jan. 14, 2019) ("[A]bsent any state-law error, and where Petitioner chose not to take the

stand, he cannot show that the exclusion of his own self-serving, hearsay statements

violated his constitutional rights.").

### B.    Victim's Prior Sexual Conduct

Petitioner also argues that he was denied the right to present a defense because

the trial court improperly precluded evidence pursuant to New York's rape shield law.

In an effort to attack the credibility of the victim at trial, defense counsel sought to

introduce evidence of the victim's (1) past accusation that another adult male sexually

abused her, and (2) past, purported participation in group sexual conduct with other

children.  (SR. 96-101).  The only apparent source of this evidence was petitioner's

recorded interview, during which petitioner suggested to the detectives that the victim

was allegedly involved in prior incidents where she engaged in sexual conduct with her

minor cousins and brother, and that she was inappropriately touched by another man.

Defense counsel also sought to cross-examine the victim regarding her alleged

disclosures to her therapist. The defense argued that this evidence "might've" supplied a

motive to falsely accuse petitioner of sexual abuse, and that it provided an alternative

explanation for the victim's knowledge of sexual matters.

Upon consideration of the issue, the trial court determined that petitioner failed to

demonstrate that the evidence concerning the victim's alleged prior "sexual conduct"

should be admitted under any exception to the rape shield law, including the interests of

19

justice exception.[4]  (SR. 103-04).  Specifically, the trial court concluded that "[a]ny connection between the allegations concerning the prior incidents and the complaining witness's motive to fabricate and/or her knowledge of sexual activity and the 'male anatomy' is speculative and so tenuous as to be irrelevant."  (SR. 104).  Furthermore, other than "defendant's *belief*," there was no showing that the victim (who would have been approximately 8-9 years old at the time) had been engaged in criminal conduct or was charged with a crime as the result of the alleged incident with her brother and cousins.  (*Id.*).  Thus, the alleged prior incident did not fall within the statutory exception of the rape shield law, and would not be relevant to the jury's determination of her credibility.  (*Id.*).  Last, the trial court concluded that, even if the victim was seeing a therapist during the time frame of the alleged conduct, the probative value of this information would not outweigh the protections of the rape shield law.  (*Id.*).

On appeal to the Third Department, petitioner argued that the trial court's application of the rape shield law violated his right to a fair trial and deprived him of evidence essential to his defense.  (SR. 152).  Rejecting petitioner's argument, the appellate court concluded that the evidence petitioner sought to introduce regarding the victim's prior sexual conduct was "exactly the type of evidence prohibited by the Rape

[4] As previously discussed, the prosecution initially sought to introduce petitioner's recorded interview as evidence at trial, which the defense objected to based, in part, on the purported failure of the detectives to advise petitioner of his right to counsel.  (T. 38-47).  At a *Huntley* hearing, the trial court determined that the recorded interview was admissible up until the point where petitioner requested an attorney.  (T. 48-50).  Subsequently, the prosecution made an application to have certain portions of the recorded interview redacted, because petitioner mentions to the detective that the victim was allegedly involved in prior sexual incidents and alleged that she was inappropriately touched by another man.  (T. 54-58).  Defense counsel objected to the prosecution's motion, arguing, as he does now, that such evidence was admissible and relevant to petitioner's defense.  (SR. 96-101).

Shield Law." *Gaylord,* 194 A.D.3d at 1190.  Thus, they concluded that the trial court

did not abuse its discretion in limiting exploration of the victim's alleged prior sexual

experiences, particularly because such information was not supported by any evidence

other than through petitioner's testimony, and "such irrelevant testimony would likely

have confused the jury."  (*Id.*).

The trial and appellate court's application of the rape shield law does not entitle

petitioner to habeas relief in this instance.  As an initial matter, it was within the trial

court's discretion to preclude such evidence.  The relevant section of New York's rape

shield law, which provides for an "interest of justice exception," states:

> Evidence of a victim's sexual conduct shall not be admissible in
> a prosecution for an offense or an attempt to commit an offense
> defined in article one hundred thirty of the penal law unless
> such evidence: . . . (5) is determined by the court after an offer
> of proof by the accused outside the hearing of the jury, or such
> hearing as the court may require, and a statement by the court
> of its findings of fact essential to its determination, to be
> relevant and admissible in the interests of justice.

N.Y. Crim. Proc. Law § 60.42; *see also People v. Jovanovic*, 263 A.D.2d 182, 197 (1st

Dep't 1999) (stating that the "interests of justice" exception to the rape shield law "was

included in order to give courts discretion to admit what was otherwise excludable

under the statute . . . where it is determined that the evidence is relevant").  Here, the

victim's purported sexual conduct did not appear to occur during or immediately prior

to the petitioner's sexual abuse and, at most, suggested that she had been sexually

victimized in the past.  Such evidence did not, however, even remotely suggest that the

victim had "made up" any prior instances of sexual abuse, such that might call into

21

question her credibility in the instant matter. *People v. Gozdalski*, 239 A.D.2d 896, 896 (4th Dep't 1997) ("The court properly exercised its discretion in restricting cross-examination of the victim concerning a prior rape complaint. Defendant failed to establish a basis for the allegation that the prior complaint was false."). Nor did the purported incident between the victim and her young family members call into question her credibility. *See People v. Mann*, 41 A.D.3d 977, 979 (3rd Dep't 2007) (where minor victim had "acted out sexually," including one instance involving her and her female cousins which resulted in the family being referred to a juvenile sex offender program, the court concluded that these "vague allegations of kissing, touching and 'naked games' between young female relatives are not the type of acts which would be highly probative of a witness's credibility."). Accordingly, the trial court did not abuse its discretion in determining that this evidence had limited-to-no probative value, and that its relevance was outweighed by the victim's right to be protected and the need for confidentiality.

Moreover, the trial court's application of New York's rape shield law was not arbitrary or disproportionate to the purposes it is designed to serve. "Rape shield laws have been enacted by Congress and the majority of states." *Portuondo v. Agard*, 117 F.3d 696, 702 (2d Cir. 1997), *rev'd on other grounds*, 529 U.S. 61 (2000). "Insofar as rape shield laws are concerned, the Supreme Court has recognized that they express the States' legitimate interest in giving rape victims 'heightened protection against surprise, harassment, and unnecessary invasion of privacy.'" *People v. Williams*, 81 N.Y.2d 303,

313 (1993) (quoting *Michigan v. Lucas*, 500 U.S. 145, 150 (1991)). As the Second

Circuit recently expressed,

> state and federal rulemakers have broad latitude under the
> Constitution to establish rules excluding evidence from criminal
> trials," *United States v. Scheffer*, 523 U.S. 303, 308 . . . (1998),
> "based on concerns about, among other things, harassment,
> prejudice, [or] confusion of the issues," *Delaware v. Van
> Arsdall*, 475 U.S. 673, 679 . . . (1986). This is so even when
> exclusionary rules, like the rape shield law, diminish a
> defendant's "ability to confront adverse witnesses and present a
> defense," *Michigan v. Lucas*, 500 U.S. 145, 149 . . . (1991), so
> long as their application is not "arbitrary or disproportionate to
> the purposes they are designed to serve," *Rock v. Arkansas*, 483
> U.S. 44, 56 . . . (1987).

*Garrison v. Lee*, 832 F. App'x 28, 30 (2d Cir. 2020).  Here, petitioner has failed to

establish that the application of the rape shield law in this instance infringed on any of

petitioner's "weighty interests."  The victim's past, purported sexual experiences were

not probative of petitioner's guilt or any relevant defenses, and did not make her

accusations against the petitioner any less credible. *See, e.g., United States v. Elbert*,

561 F.3d 771, 777 (8th Cir. 2009) ("Whether the children engaged in acts of prostitution

before or after their encounters with [defendant] is irrelevant, and would only prove

other people may be guilty of similar offenses . . . .").

Moreover, in light of the weak probative value of the precluded evidence, and the

significant evidence against petitioner, any error in the application of the rape shield

law in this instance would have been harmless.  As previously discussed, the victim

offered extensive testimony detailing the abuse, which the jury apparently found

credible.  DNA evidence also supported the verdict, as did the testimony of the victim's

family members.  As other circuit courts have recognized, any error in the exclusion of proffered evidence under a state's rape shield law is rendered harmless where, as here, proof of the petitioner's guilt is overwhelming. *Dittrich v. Woods*, 419 F. App'x 573, 578 (6th Cir. 2011) (holding that exclusion of evidence under state's rape shield law was at most harmless error where evidence of the petitioner's guilt was overwhelming); *United States v. Valenzuela*, No. 91-10391, 1992 WL 132907, at *1 (9th Cir. 1992) (district court did not err in barring evidence regarding previous sexual molestation of victim and, even if it did err, such error was harmless in light of overwhelming evidence against defendant); *Jeffries v. Nix*, 912 F.2d 982, 988-89 (8th Cir. 1990).  Accordingly, petitioner is not entitled to relief on this basis.

## IV.    Prosecutor's Summation and Trial Court's Limiting Instruction

Petitioner argues that his constitutional rights were violated by the trial court's inadequate curative instructions to the jury with respect to the prosecutor's summation remarks about the victim's life experiences.  (Pet. at 8). During summation, the prosecutor stated, in reference to the victim's testimony regarding petitioner's sexual abuse, that "a 13-year-old girl who was 11 and 12 at the time shouldn't have the life experiences to be able to give you the detail that she did." (T. 966).  The prosecutor repeated the phrase "life experiences" a handful of times. (T. 908, 919).  At the close of summations, defense counsel argued that the prosecutor's remarks about the victim's life experiences were improper, given the court's exclusion of evidence of the victim's past sexual conduct.  (T. 933-34).  The court crafted a curative jury instruction to

24

address defense counsel's concerns, to which defense counsel consented.  (T. 937).  The

court charged the jury as follows:

> [D]uring [the prosecutor's] summation she had made an
> argument to you along the lines of, and I'm paraphrasing, that
> life experiences of a person are important and that the details
> that [the victim] provided about the allegations of sexual
> activity she testified she had with the defendant, should be
> believed because an 11-year-old or 12-year-old child would not
> have that kind of knowledge.

> There's no evidence or testimony at the trial concerning [the
> victim's] prior life experiences in that regard and, I'm,
> therefore, instructing you to disregard those comments and that
> argument of the prosecutor when considering this case.

(T. 939).  Defense counsel did not object to the instruction as given.  (T. 964-65).

On appeal, petitioner argued that the trial court's "attempt at a curative

instruction in the wake of [the prosecutor's] improper comments failed to dispel the

prejudice to [petitioner,]" and "d[id] not invariably cure unfair prejudice."  (SR. 155).

The Third Department addressed petitioner's argument, noting that his

> contention regarding the inadequacy of County Court's limiting
> instruction given after the prosecutor referenced the victim's
> prior "[l]ife experiences" during the summation is unpreserved
> inasmuch as defendant requested the limiting instruction and
> agreed to the language crafted by the court.

*Gaylord*, 194 A.D.3d at 1190-91.

Petitioner's present challenge to the trial court's curative instruction is

procedurally barred from habeas review on adequate and independent state law

grounds.  As previously set forth, federal habeas courts will not review a claim when

the state court's decision rests upon a state law ground that "'is independent of the

25

federal question and adequate to support the judgment.'" *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). Failing to object to jury instructions at trial constitutes "adequate and independent state procedural grounds," rendering such a claim procedurally defaulted.[5]  See *Reyes v. Keane*, 118 F.3d 136, 138 (2d Cir.1997) ("A state prisoner who fails to object to a jury instruction in accordance with state procedural rules procedurally forfeits that argument on federal habeas review."); *Engle v. Isaac*, 456 U.S. 107, 124-25, 135 (1982) (failure to make contemporaneous objection to jury instructions in compliance with state law constitutes procedural default); *see also Colon v. Artuz*, 174 F. Supp. 2d 108, 115 (S.D.N.Y. 2001) (refusing to review habeas claim regarding trial court's jury instruction where Appellate Division had ruled that such claim was not preserved by objection).

Even under a liberal construction of his *pro se* petition, petitioner makes no claim of circumstances constituting cause for the procedural default, such as ineffective assistance of counsel.  Nor has he provided evidence of "actual innocence."  Thus, the procedural default cannot be excused, and federal habeas review of this claim is barred.

---

[5] Though not stated explicitly in the opinion, the Third Department's decision appears to rest on N.Y. Crim. Proc. Law § 470.05(2) as a basis for finding petitioner's claims unpreserved for appellate review. *See Gaylord,* 194 A.D.3d 1189 (citing, inter alia, *People v. Irby,* 140 A.D. 3d 1319, 1323 (3rd Dep't 2016).  *Irby*, in turn, cites to *People v. Prato*, 143 A.D.2d 205, 206 (3rd Dep't 1988), which cites to § 470.05(2), also known as New York's "contemporaneous objection rule," *Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011), which requires that counsel object to an error "at a time and in a manner" that gives the trial judge an "opportunity to remedy the problem" in order to preserve that error for review by the Appellate Division, *Downs v. Lape*, 657 F.3d 97, 103 (2d Cir. 2011).

## V.    Evidence of Uncharged Crime

Petitioner argues that the trial court improperly admitted the victim's testimony concerning a prior bad act, and failed to issue a limiting instruction with respect to the same.  (Pet. at 10).  During the victim's direct examination, the prosecutor elicited testimony that, in May 2017, petitioner punched the victim in the stomach to induce a miscarriage out of fear that she might be pregnant.  (T. 430).  Defense counsel objected to this testimony, based on the government's failure to provide notice of this evidence pursuant to a *Molineux*[6] application.  (*Id.*).  The trial court overruled the objection, and the victim proceeded with testifying.

On appeal, petitioner argued that the admission of such testimony, in the absence of any prior ruling concerning its admissibility, violated petitioner's right to a fair trial. (SR. 159).  The Third Department agreed that the trial court erred in allowing the victim's testimony without the defense having been put on notice and afforded a hearing to determine its admissibility.  *Gaylord*, 194 A.D.3d at 1193.  However, the appellate court found this error to be "harmless," in light of the "overwhelming proof" of petitioner's guilt, and the fact that such evidence was "proper inasmuch as it was material and relevant as it is 'inextricably interwoven with the charged crimes, provides

---

[6] The *Molineux* rule requires that evidence of a defendant's prior bad acts or crimes be excluded unless it is probative of a material issue other than criminal propensity and its probative value outweighs the risk of prejudice to the defendant.  *See People v. Williams,* 156 A.D.3d 1224, 1229 (3ʳᵈ Dep't 2017) (citations omitted).  Such evidence may be admitted, however, if it falls within the recognized *Molineux* exceptions – motive, intent, absence of mistake, common plan or scheme and identity – or where such proof is inextricably interwoven with the charged crimes, provides necessary background or completes a witness's narrative.  *People v. Anthony*, 152 A.D.3d 1048, 1051 (3ʳᵈ Dep't 2017) (citations omitted).

necessary background [and] completes [the victim's] narrative.'" *Id.* at 1193-94. The court also discerned that the probative value of the evidence outweighed its potential for prejudice. *Id.* at 1194. With respect to petitioner's argument that the trial court erred in not giving a limiting instruction as to this testimony, the appellate division found such argument unpreserved, because the defense did not request a limiting instruction during the trial. *Id.*

As respondent points out, petitioner is not entitled to habeas relief on this basis because he cannot show that the Appellate Division's decision was contrary to, or an unreasonable application of, "clearly established Federal law[ ] as determined by the Supreme Court of the United States." To date, the Supreme Court has expressly declined to decide whether admitting evidence of uncharged crimes violates due process, even if it is used as propensity evidence. See *Estelle v. McGuire*, 502 U.S. 62, 75 n.5 (1991) ("[W]e express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime."). Where there is no established Supreme Court law on the specific issue, and where the testimony was ultimately deemed proper under a New York law that "arguably provides even greater protection to the criminal defendant's due process rights than federal law," *Maxey v. Eckert,* No. 17-CV-6425, 2023 WL 1448048, at *8 (W.D.N.Y. Feb. 1, 2023), this court will not find that the state-court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law. . . ." *Chrysler v. Guiney*, 806 F.3d 104, 117 (2d Cir. 2015) (quoting 28 U.S.C. § 2254(d)(1)).

Furthermore, the Appellate Division's rejection of petitioner's claim concerning the trial court's failure to give a limiting instruction as to this testimony was based on an adequate and independent state law ground. Namely, petitioner's failure to request a limiting instruction at the time of trial rendered this argument unpreserved. Petitioner has not argued that any exception, such as cause for the procedural default or "actual innocence," applies to this claim, nor does this court find the application of any such exception appropriate. Accordingly, petitioner is not entitled to habeas relief on this basis.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the petition be **DENIED and DISMISSED**, and it is

**RECOMMENDED**, that a certificate of appealability be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. These objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.</u>** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of HHS*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: October 24, 2023

Andrew T. Baxter
U.S. Magistrate Judge